MARGARETHE OSTHERTHUM, APPELLANT, V. JOHN OSTHER-
THUM ET AL., APPELLEES.

FILED JANUARY 28, 1932. No. 28117.

Wilmer B. Comstock and John H. Comstock, for appel-
lant.

Max V. Beghtol, Glen H. Foe and J. Lee Rankin, contra.

Heard before GOSS, C. J., EBERLY and PAINE, JJ., and
BEGLEY and ELDRED, District Judges.

PER CURIAM.

This is a suit in equity in which plaintiff, appellant,
seeks to set aside, on the ground of fraud and undue in-
fluence, a deed made by her to her son, whose wife is
joined as the other defendant.

Plaintiff, with her husband, John F. Ostherthum, and
their two daughters and one son, came here from Germany
in 1883. They settled near where Hallam in Lancaster
county is now located. The son, John, who will be called
the defendant, was then about eighteen years old. The
next year the father bought the eighty acres involved here
and took title to it. It has continually been owned by
some member of the family. The father was not able to
do much farm work. Defendant operated the farm and
lived there not only during the remainder of his minority
but until he was 28, when he married. Soon after that
he purchased a farm nearby and has lived thereon, but
has continued to operate the home place either as tenant
or owner. Plaintiff continued to live there until May, 1928,
when she fell and fractured her hip. She was brought to
a Lincoln hospital, where she remained about ten weeks.
Since that she has lived with her daughter, Helena Stover,
whose home is near the hospital. Plaintiff is about 88
years old and is almost helpless. She is well cared for by
her daughter, who has had experience as a practical nurse.

The father died in 1907, leaving the eighty acres to defendant by will which was duly probated, but the defendant, joined by his wife, quitclaimed the land to his mother before the estate was closed. He thereupon continued to farm the land as tenant until March 30, 1927, when plaintiff reconveyed it to him, reserving during her life one-third of the crops raised on the premises. It is this deed which plaintiff asks to have set aside.

When plaintiff went to the hospital she had a considerable sum—probably in excess of $2,000—in the bank. The hospital and medical expenses and what she had paid out for care since her removal to the home of her daughter had exhausted her resources before the case was tried, except that, assuming the deed to be allowed to stand, she owns whatever is derivable from her crop interest in the land. Some at least of that has been paid, as indicated by the evidence. This is not an action to require an accounting, and we mention the items in this paragraph merely to show its connection with her testimony. She testified, by deposition, that she was a cripple, helpless, cannot earn anything and must have the farm back. Defendant testified that he never asked his mother to deed the farm to him; and she testified: "John didn't ask me directly to give him a deed but I gave him the deed, but I wanted to have peace." When she was asked what she meant by that expression, she answered: "So he couldn't say he wouldn't get anything afterwards, so he couldn't keep representing to me that he wouldn't get anything afterwards." Several times she stated in her testimony that she made the deed to defendant because she wanted peace. Plaintiff's argument is that she wanted peace from the importunities of her son. Defendant's argument is that she wanted peace of mind because she wished to be just, and because of the demands of her daughter hereinafter set forth.

Reinhard Schaad, a neighbor, called on plaintiff the day before she made the deed. She told him Mrs. Stover had been there that week and was dissatisfied because of a

will plaintiff had made and that the daughter demanded as much as John. Plaintiff detailed how the son had stayed at home, worked like a slave while the girls had left home, how her husband's will had left the farm to the son, and that John ought to have the eighty acres. She asked the witness to see the son and tell him she wanted to go to Hallam the next morning and fix the matter up. He conveyed the message; the defendant took the plaintiff to Mr. Carsten at Hallam; Mr. Carsten drew the deed that day and she executed it.

Mr. Carsten testified that she had consulted him about the matter about two weeks earlier and he had advised her to think it over thoroughly before making the deed. She informed him she wanted to make out the papers she had talked about to him previously. He made out the deed, read it to her, asked her if it was of her own free will and accord; she answered in the affirmative, executed the deed, and after it was acknowledged and fully completed she handed it to defendant. That is the deed involved here.

The burden is on the plaintiff to prove the allegations of her petition. There is no presumption of fraud or undue influence so controlling the will of a grantor as to avoid his deed. Facts constituting such fraud or influence must be proved by a preponderance of the evidence.

Our foregoing statement of the evidence is but a brief abstract but fairly indicates its gist. We have read it and are of the opinion that the evidence fails to sustain the burden laid on plaintiff. The judgment of the district court is

AFFIRMED.